## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## Judge Christine M. Arguello

Civil Action No. 09-cv-00721-CMA-KMT

JAMIE HAGGARD,

    Plaintiff,

v.

SYNTHES SPINE,

    Defendant.

## **ORDER**

This matter is before the Court on Plaintiff's Motion for Reconsideration, or in the Alternative, for Clarification (Doc. # 56). For the following reasons, the Motion is DENIED.

### **BACKGROUND**

The Motion for Reconsideration relates to a preliminary injunction entered by the Court against Plaintiff on June 12, 2009 (Doc. # 55). The Court described its factual findings in the preliminary injunction order; therefore, the Court will not rehash the facts in this Order. It suffices to say that the preliminary injunction involves a covenant not to compete between Plaintiff, a former medical device salesman, and Defendant, his former employer.

Colorado law generally prohibits enforcement of covenants not to compete. *See* C.R.S. § 8-2-113. However, the Court found that the purpose of the covenant not to

compete in this case rendered it exempt from the statutory bar on enforcement. *See* C.R.S. § 8-2-113(a)(2)(c). The Court held that the primary basis behind the covenant not to compete was to protect Defendant's trade secrets from intentional and inadvertent disclosure by Plaintiff to Defendant's competitors. Based on the parties' briefs, documentary evidence, and live witness testimony, the Court identified two broad categories of data deserving of trade secret protection: (1) customer data and (2) product data. Therefore, the Court enforced the covenant to preliminarily enjoin Plaintiff from (1) working for Defendant's competitor in the spinal and cervical device industry and (2) soliciting Defendant's customers for the duration of this lawsuit, or one year from the termination of Plaintiff's employment.

Plaintiff now moves the Court to reconsider or clarify the preliminary injunction. First, he challenges the Court's conclusion regarding trade secret protection of customer data. Second, he argues that the preliminary injunction order is unreasonable with regard to the length of time it prohibits Plaintiff from soliciting former customers. Third, he seeks clarification regarding the scope of persons he may contact under the injunction.

Plaintiff faces a difficult burden, since motions for reconsideration are not lightly granted. *See generally Servants of the Paraclete v. Doe*, 204 F.3d 1005 (10th Cir. 2000) (discussing standards for reconsideration).[1] For example, the Court need not

---

[1] The Court recognizes that *Servants of the Paraclete* did not address a motion to reconsider under Federal Rule 52, as is the situation in this case. However, the Court concludes that *Servants of the Paraclete* nonetheless identifies the appropriate

reconsider the preliminary injunction on the basis of arguments that this Court has already rejected in deciding the preliminary injunction. *See id.* at 1012. Likewise, the Court need only consider new arguments raised by Plaintiff regarding previously available evidence if Plaintiff can establish that extraordinary circumstances precluded him from raising the argument earlier. *Id.* Plaintiff cannot meet this difficult standard of review.

## DISCUSSION

First, Plaintiff argues that the Court improperly gave trade secret protection to the customer data he developed while working for Defendant. He argues that Defendant's competitors could also develop this information and, therefore, it is not subject to trade secret protection. Somewhat inexplicably, Plaintiff concludes that because the Court erred in giving trade secret protection to customer data, it also erred in enforcing the geographic limitation contained in the covenant not to compete. The Court fails to see the logical link between its decision to protect customer data, and enforcement of the geographic limitation in this case.

Moreover, even if the protection of customer data did somehow call into question the reasonableness of geographic restriction, the Court concludes that Plaintiff's argument fundamentally misconstrues the nature of trade secret protection. Indeed, the fact that other competitors have developed (or may be able to develop) their own

---

standard of review for Plaintiff's Motion for Reconsideration since Rule 52 does not set out its own standard.

customer data relating to the same customers solicited by Plaintiff, does not preclude trade secret protection of the data created by Plaintiff. *See, e.g., Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003) (noting that uniquely organized data which provides a competitive advantage may be protected). Instead, as the Court stated in the preliminary injunction order, "A trade secret can exist in a combination of characteristics and components each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Rivendell Forest Prods., Ltd. v. Georgia-Pacific Corp.*, 28 F.3d 1042, 1045 (10th Cir. 1994) (quotations omitted). Thus, because Plaintiff has not shown that the Court erred in giving trade secret protection to the customer data, the Court declines to reconsider the preliminary injunction on this basis.

In a related argument, Plaintiff contends that *Reed Mill & Lumber Co., Inc. v. Jensen*, 165 P.3d 733 (Colo. Ct. App. 2006), requires reconsideration of the protection given to Plaintiff's customer data. However, the Court disagrees.

*Reed Mill* deals with enforceability of a covenant not to compete ancillary to the sale of a business. 165 P.3d at 735. As such, *Reed Mill* addresses the applicability of a statutory provisions that are not at issue in this case, C.R.S. §§ 8-2-113(2)(a) and (d). In fact, *Reed Mill* does not even use the phrase "trade secret" in the opinion. Thus, this Court cannot understand how Plaintiff cites to *Reed Mill* for the proposition that, "Colorado law does not consider good will and knowledge of a certain customer to be a

legally protected trade secret." (Doc. # 56 at 4.) Moreover, the time periods at issue in *Reed Mill* (upwards of six years) are distinguishable from the time periods at issue in this case (one to three years). Add to these critical legal and factual distinctions the fact that this Court is not strictly bound by the decision in *Reed Mill*,[2] and the Court concludes that *Reed Mill* does not require reconsideration of the preliminary injunction.

Plaintiff also challenges the Court's interpretation of "look back" provision in the non-solicitation clause of the covenant not to compete. He contends that it creates an unreasonably long prohibition that is unsupported by the evidence. Plaintiff did not raise this specific argument before, and the Court concludes that it does not warrant reconsideration now, either.

The "look back" provision of the non-solicitation clause prohibits Plaintiff from contacting customers he had previously done business with during the last three years of his employment with Defendant. Plaintiff argues that this provision essentially extends the time limitation in the covenant not to compete beyond the one-year time limitation authorized by the Court. Plaintiff does not cite to legal authority to support his point, instead he posits a law school-type hypothetical.

In the hypothetical, Plaintiff contends that if he contacted a customer in 2006, but did not re-contact that customer before being terminated in 2009, under the look back provision, he would be precluded from contacting the customer for four years.

---

[2] *See Occusafe, Inc. v. EG&G Rocky Flats, Inc.,* 54 F.3d 618, 622 (10th Cir. 1995) ("In a diversity case, federal courts are not absolutely bound by the decisions of intermediate state appellate courts . . . .") (internal quotations and citations omitted).

However, contrary to Plaintiff's conclusion, Plaintiff could have, but did not, contact the customer at any time between 2006 and 2009.  He cannot say now that his failure to contact the customer for the three years prior to termination resulted from compliance with the look back provision.  Rather, his non-communication with the customer resulted from his own failure to re-contact that customer.  Thus, even in Plaintiff's hypothetical, the non-solicitation period is only one year, beginning at the time Defendant terminated Plaintiff in February 2009.

Plaintiff's also requests clarification of the preliminary injunction to make it clear that Plaintiff may freely solicit customers outside of the spinal and cervical implant industry.  However, the preliminary injunction does not need clarification on this issue because, in contrast to Plaintiff's argument, the preliminary injunction could not "arguably extend . . . to the sales of non-spinal implants to those customers previously identified as Plaintiff's."  (Doc. # 56 at 6.)

Defendant correctly points out that the injunction incorporates portions of the non-solicitation provision.  That provision specifically prohibits Plaintiff from contacting Defendant's customers and prospects "*for the purpose of competing or interfering*" with Defendant's business.  (Doc. # 55 at 4 (emphasis added).)  Since Defendant does not manufacture or sell products outside of the spinal and/or cervical device industry, only a strained and illogical reading of the preliminary injunction would produce the unreasonable restrictions that Plaintiff fears.  Thus, the Court concludes that the plain

language of the preliminary injunction allows Plaintiff to solicit non-competing business and no clarification of this point is required.

Finally, in his reply in support of the Motion for Reconsideration, Plaintiff contends the Court should clarify the scope of trade secret protection in order to prevent the covenant not to compete from prohibiting Plaintiff from soliciting doctors for which Plaintiff did not create any data, but who are otherwise affiliated with Plaintiff's former customers. However, clarification on this point is also unnecessary. Indeed, Plaintiff answers his own request for clarification when he states, "the trade secret data is specific to a particular doctor, [thus,] by definition, it would not apply to an affiliate." Plaintiff's own explanation is correct.

Accordingly, Plaintiff's Motion for Reconsideration (Doc. # 56) is DENIED.

DATED: July 29, 2009.

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge